No. 14486

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

THE KOOTENAI CORPORATION,
a Montana Corporation,

Plaintiff and Respondent,

-vs-

WAYNE L. DAYTON and
JEROME F. BORKOSKI,

Defendants and Appellants.

---

Appeal from:  District Court of the Fourth Judicial District,
Honorable Edward Dussault, Judge presiding.

Counsel of Record:

For Appellants:

Milodragovich, Dale and Dye, Missoula, Montana
Harold Dye argued, Missoula, Montana

For Respondent:

Robert B. Brown argued, Stevensville, Montana

---

Submitted: September 18, 1979
Decided: OCT 11 1979

Filed: OCT 1 1979

*Thomas J. Kearney*
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant, Jerome F. Borkoski, appeals from a denial of a motion to set aside a default judgment.

On March 27, 1974, Wayne Dayton agreed to buy from the Kootenai Corporation (Corporation) a certain parcel of real estate in Ravalli County, Montana. The contract provided that payment for the land would be made over several years and when the full purchase price was paid title would pass to the buyer. The transfer of this property also included the transfer of an on-premise beer license to the buyer. The agreement provided that in the event of a default by the buyer that all of Buyer's interest in the property would terminate and that the Buyer "shall reassign the beer license."

On December 30, 1974, this contract was assigned by Wayne Dayton to Jerome F. Borkoski. At the bottom of the last page of the assignment of contract is an acceptance of the assignment signed by the President of the Corporation.

On October 13, 1977, the defendant Borkoski was served with a notice of default and cancellation of contract. The reason given for the notice was that Borkoski had allowed the on-premises beer license to be revoked.

On June 24, 1978, Borkoski was served with a summons and a complaint. The complaint alleged that the corporation "is the owner and is entitled to the immediate possession of certain described real property . . ." It then continued:

> "That the Defendant Wayne L. Dayton surrendered deed to the above-described premises to the plaintiff, which deed, conveying his interest in the premises, was recorded on the 26th day of May, 1978, in Book 147 of Deeds at Page 514, Records of Ravalli County, Montana. That the Defendant, Jerome F. Borkoski, prior to the 26th day of May, 1978, entered and took possession of the said premises peacefully, without right to do so, and from and after the 26th day of May, 1978, holds and keeps possession of the same unlawfully and by force, contrary to the form of the statute in such case made and provided."

The complaint further alleged that the plaintiff was "deprived of the rents, issues and profits of said land and premises ever since the 26th day of May, 1978, to its damage in the sum of $20.00 per day . . ." and prayed for restitution and treble damages.

The summons required that the defendants appear in the District Court on June 30, 1978. The summons also stated that the action was one for forcible detainer of the premises. Borkoski did not appear in court on that date and judgment was entered against him on the same day.

On July 14, 1978, Borkoski, through his attorney, filed a motion to set aside judgment by default. The motion alleged that the failure of Borkoski to appear in court on June 30 was due to excusable mistake, and that the action had not been properly brought under the unlawful detainer statute, because the parties were not landlord and tenant. An affidavit attached to this motion stated Borkoski had failed to appear in court on June 30 for the following reasons:

> "[The defendant] was under the impression that it
> was not necessary for him to go to Court unless
> the Defendant Wayne L. Dayton was also served with
> a Summons ordering him to go to Court at the same
> time. Your Affiant was told by Mr. Dayton that he
> had not been served with process ordering him to
> appear on June 30, 1978, and assumed that it was
> not necessary for your Affiant to do so. Your
> Affiant further telephoned the Clerk of Court's
> office and was informed that the above mentioned
> matter was not on the calendar for June 30, 1978,
> and therefore assumed that it was not necessary
> for him to appear in Court on that date."

The affidavit further stated that Borkoski was "informed and believes that the Plaintiff contends that [Borkoski] has forfeited his rights under the Contract . . . because [Borkoski] has allowed a certain . . . liquor license to lapse."

On July 28, there was a hearing on the motion. The only person questioned during testimony was Mr. Brown, the attorney for the corporation. During this testimony the original contract

for deed, the assignment of this contract to Borkoski, and the notice of default were all introduced into evidence.

At the end of the hearing the district judge denied Borkoski's motion. It is from this denial that defendant appeals.

The issues on appeal are as follows:

I. Whether the summary proceeding of forceful detainer may be used to recover property sold under contract for deed?

II. Whether the District Court judge abused his discretion in not setting aside the judgment by default?

ISSUE 1.

Defendant's central contention is that the District Court erred in allowing the plaintiff to bring an action for forcible detainer rather than requiring that the action be one for ejectment. Defendant contends that an action for ejectment would have allowed him twenty days to answer under Rule 12(a), M.R.Civ.P. As it occurred, the default was entered only six days after the summons was served in accordance with the forcible detainer statute. Cited in support of the proposition that the plaintiff is barred from bringing this action under the forcible detainer statute is Kransky v. Hensleigh (1965), 146 Mont. 486, 409 P.2d 537. In Kransky this Court said "Whenever the unlawful detainer statutes, §93-9701, R.C.M. 1947, et seq. [now section 70-27-101, MCA, et seq.], are brought into operation it is the rule that such action may only prevail where the relation of landlord-tenant exists." 146 Mont. at 490, 409 P.2d at 539.

In the present case it is clear that a landlord-tenant relationship did not exist. The legal relationship was contractual. It must be noted, however, that Kransky is limited to the unlawful detainer statute, section 70-27-108, MCA, which by its language specifically provides that the action may only be brought against a tenant. The present case was brought as a forcible detainer

- 4 -

action under section 70-27-103, MCA. A reading of this statute will reveal that a landlord-tenant relationship is not required in order to bring this action. This section states in part:

> "Every person is guilty of a forcible detainer who either:
>
> "(1) by force or by menaces and threats of violence unlawfully holds and keeps the possession of any real property or mining claim, whether the same was acquired peaceably or otherwise . . ."

The Corporation alleged these elements in their complaint.

The cases in Montana which construe this statute and its predecessors have not limited its application to landlord-tenant circumstances. In Kennedy v. Dickie (1902), 27 Mont. 70, 69 P. 672, the plaintiff was allowed to bring a forcible detainer action against a defendant who had simply ousted the plaintiff from his farm. 27 Mont. at 73, 69 P. at 673. For other cases where a forcible detainer action was brought where there was not a land-lord-tenant relationship see, Park Saddle Horse Co. v. Cook (1931), 89 Mont. 414, 300 P. 242; Spellman v. Rhode (1905), 33 Mont. 21, 81 P. 395, and McCleary v. Crowley (1899), 22 Mont. 245, 56 P. 227.

While these cases do not involve a contractual relation-ship they certainly indicate that a landlord-tenant relationship is not necessary to bring a forcible detainer action. For this reason Kransky does not apply.

This is not to say that the plaintiff in the present action would have prevailed at trial under a forcible detainer action, but there is no indication under Montana law that an ejectment action must be brought when the parties have a contractual relation-ship. Likewise, there is no indication that where a contractual relationship does exist between the parties that the plaintiff may not bring a forcible detainer action. The District Court did not commit error by allowing the forcible detainer action in this case.

At this point we feel that it is necessary to make some

observations concerning the differences between ejectment and forcible detainer actions. The Corporation alleges that the procedures for ejectment are found at sections 70-27-101, MCA, et seq. These sections include the forcible detainer statutes, among other provisions.

Case law in Montana indicates that ejectment and forcible detainer are not the same cause of action. In Miner v. Cook (1930), 87 Mont. 500, 288 P. 1016, this Court said:

> "The vital allegations of this complaint [eject-ment] are (a) plaintiff's ownership and right to possession of the tract of land described in the complaint and from which it is alleged he was ejected by defendants, and (b) wrongful and un-lawful ouster and ejectment by the defendants. Proof of both of these vital allegations is neces-sary in order to make out a case." 87 Mont. at 502-503, 288 P. at 1017.

In Kennedy v. Dickie, supra, this Court said:

> "If the purpose of the action is to obtain relief from a forcible detainer, proof must be made under section 2092 [section 70-27-203, MCA] (1) of the forcible detainer as described in section 2081 [section 70-27-103, MCA]; and (2) of the plaintiff's right to the possession at the time of the forcible detainer." 27 Mont. at 75, 69 P. at 674.

As can be easily seen the two causes of action are differ-ent. In ejectment the question of title is necessary to a resolu-tion of the dispute. In forcible detainer title is not an issue. Therefore, the summary procedures provided for in sections 70-27-101, MCA et seq., do not apply to ejectment actions.

The contract which is at the heart of this action provides that upon default of the agreement by the buyer the seller (Cor-poration) had the option of terminating the agreement. In other words, the seller is given an election of whether to terminate the agreement or not upon the buyer's default. Obviously, ter-mination of the agreement is not the Corporation's sole remedy in the event of a default. As was said by this Court in White v. Jewett (1938), 106 Mont. 416, 78 P.2d 85:

"A party may pursue any remedy which the law affords in addition to the remedy provided by the contract, unless it declares the remedy to be exclusive." 106 Mont. at 420, 78 P.2d at 87.

In the present case the contract did not specifically name a remedy which was to be exclusive in the event of a default, and the law affords to the Corporation a forcible detainer action.

Finally, the defendant contends that section 70-27-203, MCA, is a statute of limitations which bars plaintiff's action. Defendant did not present this defense in District Court, therefore we will not consider this contention.

ISSUE II.

Section 70-27-117, MCA, states:

"If at the time appointed the defendant does not appear and defend, the court must enter his default and enter judgment in favor of the plaintiff as prayed for in the complaint."

In this case the defendant did not appear on June 30, 1978, and the judge had no discretion at this point. A default judgment had to be entered.

Montana's Rules of Civil Procedure permit a default judgment to be set aside for the same reasons a trial court may set aside a judgment following a trial on the merits. Rule 55(c), M.R.Civ.P., says in part:

"For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b) . . ."

Rule 60(b), M.R.Civ.P. says:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:

"(1) Mistake, inadvertence, surprise, or excusable neglect . . ."

The standard of review for default judgments is stated in Eder v. Bereolos (1922), 63 Mont. 363, 368, 207 P. 471, 472, where this Court said:

- 7 -

"In order to justify the district court in grant-
ing the motion, the defendant was required to show:
(a) That he proceeded with diligence; (b) his
excusable neglect; (c) that the judgment, if per-
mitted to stand, will affect him injuriously, and
that he has a defense to plaintiff's cause of action
upon the merits."

This standard of review must be applied with the under-

standing that "No great abuse of discretion by the trial court in

refusing to set aside a default need be shown to warrant a reversal,

for the courts universally favor a trial on the merits."  Brothers

v. Brothers (1924), 71 Mont. 378, 383-84, 230 P. 60, 61.  In

Reynolds v. Gladys Belle Oil Co. (1926), 75 Mont. 332, 341, 243 P.

576, 579, this Court said " . . . since 'it is the policy of the

law to have every litigated case tried on its merits,' judgments

by default are not favored."

This policy is best stated in Holen v. Phelps (1957),

131 Mont. 146, 150, 308 P.2d 624, 627:

"In furtherance of justice, trial courts should,
in applying the above statute [sec. 9187, Rev.
Codes, 1921, a predecessor of Rule 60(b), M.R.
Civ.P.] to a given case, maintain and exercise that
liberal spirit which prompted the Legislature to
grant them this discretionary power, and, while
this court will disturb the action of a trial
court in opening default only in exceptional
cases, 'no great abuse of discretion by the
trial court in refusing to set aside a default
need be shown to warrant a reversal.'"

From a reading of the above cited cases it is clear that

the issue of abuse of discretion must be made on a case-by-case

basis.  With this in mind it is helpful to look at the defendant's

actions in this case, and apply to them the standard from Eder v.

Bereolos, supra, which is set out above.

There is no doubt that Borkoski proceeded with diligence.

His motion to set aside the default judgment was entered only 14

days after the default judgment had been entered.

There is also no doubt that the defendant will be injuriously

affected by the loss of this property.

Defendant has a defense to plaintiff's cause of action

- 8 -

upon the merits. Plaintiff alleged in the complaint that the defendant " . . . entered and took possession of the said premises peacefully, without right to do so . . . and keeps possession of the same unlawfully . . ." Defendant has alleged that he had the right to enter and take possession of the premises, and he has alleged that his possession continued to be lawful under the terms of the contract which was assigned to him. While we do not hold that the defendant would win upon the merits, we find that he has presented a defense of sufficient merit to meet the criteria of Eder v. Bereolos, supra.

The issue comes down to the question of excusable neglect. The following Montana cases provide us with some guidance on this matter.

In Brothers v. Brothers, supra, the only question presented was the defendant's excusable neglect. This Court held that the defendant's erroneous belief that her appearance before a notary public was the only appearance required of her would not warrant setting aside the default. 71 Mont. at 382. This Court went on to hold, however, that these facts coupled with the fact that the defendant had recently spent some time in a state hospital because of her insanity warranted excusable neglect. 71 Mont. at 384-85.

In Schalk v. Bresnahan (1960), 138 Mont. 129, 354 P.2d 735, this Court held that it was not excusable neglect where defendant failed to appear because of forgetfulness. 138 Mont. at 132, 354 P.2d at 736.

In Worstell v. DeVine (1959), 135 Mont. 1, 335 P.2d 305, this Court had occasion to review the Montana case law on excusable neglect. This Court said:

> "We observe that since 1922, the cases we have
> studied indicate that the decisions turn
> on promptness and diligence in moving to set
> aside the default and on whether or not a show-
> ing of a meritorious defense is made." 135 Mont.
> at 6, 335 P.2d at 307.

In the present case, the defendant's strongest point is his

promptness in moving to set aside his default, and we have held that a showing of a meritorious defense has been made. In an affidavit to the District Court the defendant stated that he did not appear on the return date because he believed that he did not have to appear until Wayne Dayton was served. He also stated in the affidavit that the Clerk of Court had said that no hearing date had been set. The defendant only had six days from the time of service until the default judgment was entered. With this in mind the excuse which the defendant offered to the District Court constitutes excusable neglect. The District Court abused its discretion in not setting aside the default judgment.

The default is vacated and the case remanded to the District Court for further proceedings.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 10 -